## 22982. SOUTHERN RAILWAY COMPANY *v.* RICHARDSON.
## 22983. SOUTHERN RAILWAY COMPANY *v.* SHAVIN.

DECIDED OCTOBER 28, 1933. REHEARING DENIED DECEMBER 20, 1933.

Oliver R. Hardin, Sapp & Maddox, Maddox, Matthews & Owens, for plaintiff in error.

R. Carter Pittman, Mann & Mann, contra.

SUTTON, J. ■ Evidence to the effect that on a windy March morning just before daylight a train of the defendant company, while being operated on its tracks about one hundred yards west of a barn owned by the plaintiff in one of these cases, and in which the plaintiff in the other of these cases had certain hay stored, was emitting a continuous stream of sparks in large volume, to a height of five or six feet above the top of the smokestack of the locomotive pulling the train, and which were being carried by a high west wind towards the barn where the hay was stored, that the locomotive, from the noise it made, was apparently pulling a heavy load, that large cinders were coming from the smokestack, that burned cinders, apparently fresh, were found around and close to the barn soon after the train passed, that the loft of the barn on the side facing the railroad-tracks was latticed and hay was stored in the loft and packed up against this lattice work, and the fire started in the hay in the barn loft at this place, that it was possible for cinders to be blown through the lattice work into the hay, that the fire was discovered immediately after the train passed, that no other train passed there that night, and that there was no other source from which the fire likely originated, was sufficient to authorize a finding by the jury that the fire was caused by a spark or sparks from the locomotive pulling the train. L. & N. R. Co. v. Studdard, 34 Ga. App. 570 (2) (130 S. E. 532) ; Yeager v. Cooley, 45 Ga. App. 452 (3) (165 S. E. 156).

■ The fact that sparks, as large as the end of a man's finger or larger, were pouring from the smokestack of the engine in a continual stream just prior to and about the time the train passed the barn, and that the fire started immediately after the train passed, was evidence to be considered by the jury in determining whether the defendant's engine was equipped with a proper spark-arrester, although there was evidence for the defendant that the engine in question had been examined a day or so before and a day or so after the fire, and at both times was equipped with a proper spark-arrester in good condition, that it was impossible for the locomotive

to emit sparks through such arrester as large as the end of a man's little finger, and that the spark-arrester was of the type in general use by the railroads of this country. *Bugg* v. *Lang,* 35 *Ga. App.* 704, 706 (134 S. E. 623).

■ In the instant case the barn was located on lower ground and down a hill from the tracks of the railroad company, at a place where the locomotive was emitting a steady stream of large sparks, and the wind was blowing in the direction of the barn from the train. The fire originated in the loft of the barn immediately after the train passed, and the contention was that a spark or sparks from the engine went through the lattice work in the loft of the barn on the side facing the railroad and into the hay, and that the fire started in this way. The jury were authorized to infer, from the evidence, that the engine was equipped with a defective spark-arrester; and, under the circumstances, it was also a question for the jury to determine whether the alleged negligence of the defendant was the proximate cause of the fire.

■ The court did not err in charging the jury that "what was required by the defendant company on the occasion in question for the protection of the property of these plaintiffs was . . ordinary care for their protection. Ordinary care is that degree of care and caution which an ordinarily prudent [man] would exercise under similar circumstances." "One using fire for the generation of steam . . must use ordinary care to prevent injury to the property of others through the communication of fire by the escape of sparks from a smokestack." *Yeager* v. *Cooley,* supra.

· ■ There was no error in charging the jury that it was incumbent upon the plaintiff, in a case like this, to prove that the fire was ignited from the sparks emitted from the locomotive of the defendant, that this proof might be either direct or circumstantial, and that it must be sufficient to establish a reasonable inference that the fire so originated from sparks emitted by the locomotive and through a spark-arrester that was defective. This stated a correct, applicable principle of law. There was direct evidence that the locomotive of the defendant was emitting a continuous stream of large sparks just prior to and about the time it passed the barn which was burned. There was direct evidence that the engine was apparently pulling a heavy load and that there was a high wind blowing towards the barn. There was evidence that immediately

after the train had passed the fire was discovered. This evidence, taken in connection with the fact that there was nothing to point to the origination of the fire from any other source, was sufficient to establish a reasonable inference that the fire originated from sparks emitted from the defendant's locomotive. Furthermore, the court expressly charged the jury that "if the evidence raises only a mere conjecture as to whether or not the fire was or was not so occasioned, no recovery can be had."

■ In connection with the foregoing charge the court did not err in charging the jury that "It would be sufficient in law to fix the source of the fire upon the railroad company, if the evidence in your opinion makes a prima facie case that it do so occur." This charge was not erroneous for any of the reasons assigned, and did not nullify the previous charge given. The court did not by this charge instruct the jury that the plaintiff could recover if the evidence, in their opinion, made a prima facie case that the fire originated in the hay loft of the barn from sparks from the defendant's locomotive, but merely instructed them that if the evidence in their opinion, made a prima facie case that fire so occurred, it would be sufficient to fix the source of the fire as originating from sparks from the locomotive of the defendant. This was not a charge that if they believed that the evidence made such a prima facie case, the defendant would be negligent and liable. The court immediately followed this instruction with a charge that railroad companies are only chargeable with the use of such spark-arresters as are ordinarily or customarily in use for such purpose, and that it is only required to use ordinary care to see that a proper spark-arrester is in good condition, and if it performs that duty with that degree of care, then there should be no recovery.

■ The court did not err in refusing to give the following charge to the jury: "When a plaintiff undertakes, as in these cases,— seeks to carry the burden of proof resting upon him, by circumstantial evidence, I charge you that he has not carried this burden until the circumstances he places in proof tend in some proximate degree to establish the conclusion he claims; and for this, the facts must not only reasonably support that conclusion, but also render less probable all inconsistent conclusions. It is required that the circumstances relied upon be not only consistent with the conclusions sought to be established, but also inconsistent with every

other reasonable hypothesis;" the principles embodied in this request to charge being substantially and sufficiently embodied in the charge given. The omission to charge in the exact language of the request was not harmful to the defendant. The court charged the jury in this connection that the burden of proof by a preponderance of the evidence was on the plaintiff, that it was incumbent upon the plaintiff "to carry such burden by direct or circumstantial proof, either in whole or in part, and submit any evidence for the jury's decision tending in some proximate degree to establish the conclusion he claims; and for this the fact must not only reasonably support that conclusion, but also render less probable all inconsistent conclusions. It is required that the circumstances relied upon be not only consistent with the conclusion sought to be established, but also inconsistent with every other reasonable hypothesis." See *Wilson* v. *State,* 176 *Ga.* 198 (167 S. E. 111); *Ellis* v. *Reagan,* 172 *Ga.* 181 (157 S. E. 478); *Darden v. State,* 172 *Ga.* 590 (158 S. E. 414).

■ The court did not err in concluding the charge to the jury with the following instruction: "In order for there to be a recovery, it must be shown, by a preponderance of the evidence, that the damage claimed was occasioned by the negligence set up in the petition of the plaintiffs in the case." This was a correct, applicable statement as to the law. There could be no recovery by the plaintiffs except upon one or more of the charges of negligence set out in their petitions. *Georgia Brewing Asso.* v. *Henderson,* 117 *Ga.* 480 (43 S. E. 698); *Central Ry. Co.* v. *Weathers,* 120 *Ga.* 475, 479 (47 S. E. 956).

■ It was not error to admit evidence to the effect that the train in question on the morning of the fire was apparently a heavily loaded one, from the way the engine was pulling, when it passed through a place some two miles from the barn which was burned; it being the contention of the defendant that the train was not heavily loaded and that it was a light train of only twelve cars. Nor was it error, in such circumstances, to permit a witness to testify that the rails of the tracks near the place where the fire occurred had bright places on them and dry sand along the side thereof, where the drivers of the locomotive had apparently ground into the rails when the train was pulling heavily, and to permit a witness to testify that he looked out of his window as the train passed his

home and that it seemed to be a long train and heavily loaded. The weight to be given the testimony, and the credibility of the witnesses, were matters for the jury.

It was not error to admit testimony as to the value of the barn and other property destroyed by the fire. The jury could take into consideration the knowledge and lack of knowledge of the witnesses of the facts they were testifying about and weigh them. It is not a ground for objection to testimony that a witness, after testifying to a fact, testifies on cross-examination to facts that tend to show that he knows little or nothing about the fact as to which he previously testified on direct examination.

The evidence was sufficient to authorize the verdicts in both cases, and it was not error for the court to overrule the motions for a new trial.

*Judgments affirmed. Jenkins, P. J., and Stephens, J., concur.*